IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAFOCO, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § CIVIL ACTION NO. H-05-0739 |
| CAMERON INTERNATIONAL CORPORATION | § |
| f/k/a COOPER CAMERON CORPORATION, | § |
| | § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant Cameron International Corporation's ("Cameron") Motion for Partial Summary Judgment of No Infringement, Invalidity, and Unenforceability (Docket Entry No. 213) and Plaintiff Safoco, Inc.'s ("Safoco") Motion for Partial Summary Judgment that Defendant Cameron's Invalidity Defenses are Barred by Estoppel Effect of Inter Partes Reexamination (Docket Entry No. 212). Each party has filed a response in opposition to the other party's motion for partial summary judgment[1] and a reply in further support of its own motion.[2]

---

[1] See Plaintiff Safoco's Response to Defendant Cameron's Motion for Partial Summary Judgment of No Infringement, Invalidity, and Unenforceability (DE 213) and Safoco's Objections to and Motion to Strike Section of Cameron's Motion and Summary Judgment Evidence ("Safoco's Response"), Docket Entry No. 222; Defendant Cameron's Response in Opposition to Plaintiff Safoco's Motion for Partial Summary Judgment that Defendant Cameron's Invalidity Defenses are Barred by Estoppel Effect of Inter Partes Reexamination ("Cameron's Response"), Docket Entry No. 221.

[2] See Plaintiff Safoco's Reply to Defendant Cameron's Response in Opposition to Motion for Partial Summary Judgment that Defendant
(continued...)

For the reasons stated below, the court will grant, in part, Cameron's motion for partial summary judgment. The court concludes that, as a matter of law, Safoco cannot prove that Cameron willfully infringed the asserted claims of United Patent Number 6,089,531 based on Cameron's making, using, selling, or offering to sell the particular accused devices listed in Safoco's motions for partial summary judgment of infringement (Docket Entry Nos. 123, 124). The court will deny Cameron's motion for partial summary judgment in all other respects. The court will also deny Safoco's motion for partial summary judgment.

## I.  __Background__

Safoco asserts that Cameron has infringed various claims of United States Patent Numbers 6,089,531 ("'531 patent"), 6,250,605 ("'605 patent"), 6,854,704 ("'704 patent"), and 7,028,986 ("'986 patent").[3] The '531 patent initially issued on July 18, 2000, from an application filed on November 6, 1997, which was a continuation of an application filed on March 4, 1994, and now abandoned.[4]

---

[2](...continued)
Cameron's Invalidity Defenses are Barred by Estoppel Effect of __Inter Partes__ Reexamination ("Safoco's Reply"), Docket Entry No. 224; Defendant Cameron's Reply in Support of Its Motion for Partial Summary Judgment of No Infringement, Invalidity, and Unenforceability ("Cameron's Reply"), Docket Entry No. 225.

[3]__See__ Plaintiff's First Amended Original Complaint, Docket Entry No. 45, ¶ 12.

[4]Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 2. The court adopted this Memorandum and Recommendation without changes. Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 178. __See also__ '531 patent
(continued...)

After reexamination, the '531 patent was reissued with amendments on September 19, 2006.[5]  The '605 patent issued on June 26, 2001, from an application filed on March 30, 2000, and is a continuation of the '531 patent.[6]  The '704 patent issued on February 15, 2005, from an application filed on September 16, 2002, and is a continuation of Patent Number 6,450,477 ("'477 patent").  The '477 patent is a continuation of the '605 patent.[7]  The '986 patent issued on April 18, 2006, from an application filed on November 15, 2004, and is a division of the '704 patent.[8]

All four of the patents involve technology for a "valve actuator apparatus and method" and share a common specification.[9] Valve actuators are used to open and close gate valves, which are used to control the flow of fluids.[10]

---

[4](...continued)
(included in Defendant Cameron's Motion for Partial Summary Judgment of No Infringement, Invalidity, and Unenforceability ("Cameron's MSJ"), Docket Entry No. 213, at Exhibits 1 and 1A).

[5]'531 patent, Reexamination Certificate (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 1A).

[6]Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 2.  See also '605 patent (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 2).

[7]Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 2 & n.9.  See also '704 patent (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 3).

[8]Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 2-3.

[9]Id. at 3.

[10]Id.

Safoco initiated this action on March 7, 2005, asserting only infringement of the '704 patent.[11] Safoco did not initially include the '531 patent or the '605 patent because reexamination proceedings -- which were initiated by Cameron -- for those two patents, as well as for the '477 patent, were pending before the USPTO.[12] The '986 patent was not initially included because it had not yet issued.[13]

On November 22, 2005, the court referred the case to Magistrate Judge Nancy K. Johnson.[14] On January 18, 2006, Safoco notified Judge Johnson of its intention to amend its complaint to assert infringement of claims of the '531, '605, and '986 patents, once the reexamination proceedings in the USPTO concluded and the '986 patent issued.[15] Safoco requested that Judge Johnson delay the upcoming Markman hearing until after the additional patents were brought into the case.[16] A hearing was held on January 23, 2006, and Judge Johnson ordered the case stayed until the USPTO's Board of Patent Appeals and Interferences ("BPAI") had ruled on the '605 patent.[17]

---

[11]See Plaintiff's Original Complaint, Docket Entry No. 1.

[12]Plaintiff's Motion to Modify Markman Schedule, Docket Entry No. 29, at 3-4.

[13]Id.

[14]Order, Docket Entry No. 24.

[15]Plaintiff's Motion to Modify Markman Schedule, Docket Entry No. 29, at 3-4.

[16]Id. at 4.

[17]Minutes Entry, Docket Entry No. 30.

-4-

On February 28, 2006, while the case was stayed, the '986 patent issued.[18]  On September 19, 2006, the USPTO issued a reexamination certificate for the '531 patent.[19]   After incorporating amendments to several of the claims, the USPTO Examiner determined that all claims of the '531 patent were patentable.[20]

As for the '605 patent, the Examiner ruled upon reexamination that claims 1 and 2 were obvious in light of the prior art, and thus not patentable under 35 U.S.C. § 103(a).[21]   The Examiner determined, however, that claim 3 was patentable.[22]   The Examiner also rejected all claims of the '477 patent as obvious.[23]   Both Cameron and Safoco appealed this decision to the BPAI.[24]

Although the BPAI had not yet ruled in the appeal regarding the '605 patent, Judge Johnson lifted the stay on January 8, 2007.[25] Shortly thereafter, Safoco amended its complaint to add allegations

---

[18]Plaintiff Safoco, Inc.'s Status Report, Docket Entry No. 36.

[19]'531 patent, Reexamination Certificate.

[20]Id. at 1:1-22.

[21]Cameron Int'l Corp. v. Safoco Inc., Appeal Nos. 2008-0750 & 2008-0988, slip op. at 2, 19 (B.P.A.I. Dec. 4, 2008) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21E).

[22]Id.

[23]Id.

[24]See id. at 2-3.

[25]Minutes Entry, Docket Entry No. 37.

of infringement of several claims of the '531 patent, claim 3 of '605 patent, and several claims of the '986 patent.[26]

Judge Johnson conducted a <u>Markman</u>[27] hearing on September 13, 2007, and issued a Report and Recommendation on Claim Construction on November 9, 2007.[28]  The court adopted the Magistrate Judge's recommendations as to claim construction without changes on February 6, 2008.[29]

In the following months, the parties filed a total of seven motions for partial summary judgment.[30]  Judge Johnson issued three opinions regarding the parties' seven summary judgment motions,[31] all of which were adopted by the court without changes.[32]

---

[26]Plaintiff's First Amended Original Complaint, Docket Entry No. 45, ¶ 12; Cameron's MSJ, Docket Entry No. 213, Exhibit 4 (including a chart reflecting the specific claims of the '531, '605, '704, and '986 patents that Safoco accuses Cameron of infringing).

[27]<u>See</u> <u>Markman v. Westview Instruments, Inc.</u>, 116 S. Ct. 1384 (1996).

[28]Report and Recommendation on Claim Construction, Docket Entry No. 94.

[29]Order Adopting Magistrate Judge's Report and Recommendation, Docket Entry No. 105.

[30]<u>See</u> Docket Entry Nos. 114, 123, 124, 133, 136, 147, 154.

[31]Memorandum and Recommendation on Invalidity, Docket Entry No. 169; Memorandum and Recommendation on Infringement, Docket Entry No. 170; Memorandum and Recommendation on Procedural Bars to Recovery, Docket Entry No. 185.

[32]Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 178 (adopting Magistrate's Memorandum and Recommendation on Invalidity (Docket Entry No. 169) (continued...)

In the meantime, on December 4, 2008, the BPAI issued a ruling in the appeal from the Examiner's reexamination of the '605 and '477 patents.[33]   The BPAI, in a 2-1 decision, reversed the Examiner's rejection of claims 1 and 2 and of the '605 patent, as well as the examiner's rejection of all claims of the '477 patent.[34] The BPAI, however, unanimously affirmed the Examiner's refusal to reject claim 3 of the '605 patent.[35]   Cameron sought a rehearing from the BPAI, but the BPAI denied Cameron's request on April 29, 2009.[36]   On June 3, 2009, Cameron filed a Notice of Appeal

_____

[32](...continued)
and Memorandum and Recommendation on Infringement (Docket Entry No. 170)); Order, Docket Entry No. 190 (adopting Magistrate's Memorandum and Recommendation on Procdural Bars to Recovery (Docket Entry No. 185)).

[33]Cameron Int'l Corp. v. Safoco Inc., Appeal Nos. 2008-0750 & 2008-0988, slip op. at 1 (B.P.A.I. Dec. 4, 2008) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21E).

[34]Id. at 78-79, 81.

[35]Id.   After this ruling, on March 26, 2009, the parties jointly sought leave to allow Safoco to again amend its complaint in this action to add allegations of infringement of claims 1 and 2 of the '605 patent and certain claims of the '477 patent.   See Joint Stipulated Motion for Leave to Allow Plaintiff Safoco to Amend Its Complaint, and Extension of Scheduling Order Deadlines, Docket Entry No. 180.   Judge Johnson denied leave to amend.   Order, Docket Entry No. 183.

[36]Cameron Int'l Corp. v. Safoco Inc., Appeal Nos. 2008-0750 & 2008-0988, slip op. at 3 (B.P.A.I. Apr. 29, 2009) (included in Plaintiff Safoco's Motion for Partial Summary Judgment that Defendant Cameron's Invalidity Defenses are Barred by Estoppel Effect of Inter Partes Reexamination ("Safoco's MSJ"), Docket Entry No. 212, at Exhibit B1).

announcing its intention to appeal the BPAI's decision to the United States Court of Appeals for the Federal Circuit.[37]

In May of 2009, although the court had already ruled on seven motions for partial summary judgment, the parties filed another round of motions for partial summary judgment on a litany of issues. All told, the parties filed eleven motions for partial summary judgment.[38]

At a hearing on May 21, 2009, the court vacated its Order referring the case to the Magistrate Judge, struck the parties' eleven motions for partial summary judgment, and set a trial date of August 17, 2009.[39] The court ruled that each party would be allowed to file one motion for partial summary judgment not to exceed 25 pages by May 29, 2009.[40] Each party has filed its one allowed motion, a response brief, and a reply brief, all of which the court now considers.

## II. Summary Judgment Standard

The court may grant summary judgment if the movant establishes that there is no genuine dispute about any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[37]Cameron's Response, Docket Entry No. 221, at 3, Exhibit C.

[38]See Docket Entry Nos. 187, 193, 196, 197, 199, 200, 202, 203, 204, 205, 206.

[39]Minutes Entry, Docket Entry No. 210.

[40]Id.

56(c).  An examination of substantive law determines which facts are material.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  Material facts are those facts that "might affect the outcome of the suit under the governing law."  Id.  A genuine issue of material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  Id. at 2511.  The standard for summary judgment is no different in a patent case than in any other civil case.  See Johnston v. IVAC Corp., 885 F.2d 1574, 1576-77 (Fed. Cir. 1989).

The movant has the initial burden to inform the court of the basis for summary judgment.  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).  When the movant seeks summary judgment on a claim for which it does not bear the burden of proof at trial, it may satisfy its initial burden in two ways.  First, it may present evidence negating one or more elements of the nonmoving party's claim.  See id.  Alternatively, it may simply point out the absence of evidence to support the nonmoving party's claim.  Id. at 2254; Johnston, 885 F.2d at 1577.  On the other hand, if the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, it must prove each and every element of its claim or defense such that "no reasonable jury could find otherwise."  Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001).  See also Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (explaining that a party seeking summary judgment on a claim for which it bears the burden of proof at trial

-9-

"must establish beyond peradventure <u>all</u> of the essential elements of the claim").

If the movant makes the required initial showing, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because genuine fact issues exist.  <u>See</u> <u>Celotex Corp.</u>, 106 S. Ct. at 2254.  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 120 S. Ct. 2097, 2110 (2000).

### III.   **Cameron's Motion for Partial Summary Judgment**

Cameron seeks partial summary judgment on four grounds. First, Cameron asserts that it is entitled to a summary judgment of no infringement of claim 3 of the '605 patent for certain accused devices because they do not have a "lower spring retainer."[41] Cameron next contends that the court should grant summary judgment that none of the accused devices infringe any of the claims of the '531 patent or the '605 patent because the accused devices do not have an upper spring retainer "coaxially surrounding" the bonnet

---

[41]The pertinent element of claim 3 of the '605 patent reads: "a bonnet assembly including:  . . . a lower spring retainer coaxially surrounding said bonnet housing."  '605 patent, 8:40, 8:66-67.

stem.[42]  Third, Cameron asserts that claims 2, 14, and 21 of the '531 patent and claim 3 of the '605 patent are invalid as indefinite as a matter of law because the patents do not identify a structure or structures capable of performing the function recited in the "securing means" element.[43]  Fourth, Cameron contends that it is entitled to summary judgment that it did not willfully infringe the asserted claims of the '531 and '605 patents.

**A.   Non-Infringement**

  1.  <u>Applicable Law</u>

A patent claim is infringed if a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor . . . ." 35 U.S.C. § 271(a).  Analysis of infringement involves a two-step

---

  [42]Each of the claims of the '531 and '605 patents require "a bonnet assembly including . . . a [sic] upper spring retainer . . . coaxially surrounding . . . said bonnet stem . . . ."  '531 patent; '605 patent.

  [43]The "securing means" element of claims 2, 14, and 21 of the '531 patent reads:  "a bonnet assembly including . . . securing means connected to said bonnet housing in surrounding relationship therewith for longitudinally securing said operator housing to said bonnet housing."  '531 patent, Reexamination Certificate at 2:58-61, 4:51-54, 7:38-41.  The "securing means" element of claim 3 of the '605 patent requires "a bonnet assembly including . . . securing means connected to said bonnet housing in surrounding relationship therewith for longitudinally securing said operator housing to said bonnet housing, said securing means including a base ring configured for rotation relative to said bonnet housing without affecting selected bonnet stem drift."  '605 patent, 8:40, 9:1-6.

process.  <u>Syntex (U.S.A.) LLC v. Apotex, Inc.</u>, 407 F.3d 1371, 1377
(Fed. Cir. 2005).  First, the court must interpret the claim.  <u>Id.</u>
Claim construction is a matter of law for the court.  <u>Markman v.
Westview Instruments, Inc.</u>, 116 S. Ct. 1384, 1396 (1996); <u>Syntex</u>,
407 F.3d at 1377.  Once the claim has been construed, it must be
compared to the allegedly infringing device.  <u>Syntex</u>, 407 F.3d at
1377.  Whether the accused device reads onto the properly construed
claim is a question of fact.  <u>Id.</u> at 1377-78.

     An accused device may infringe a patent claim either literally
or under the doctrine of equivalents.  "Literal infringement of a
claim exists when every limitation recited in the claim is found in
the accused device, i.e., when the properly construed claim reads
on the accused device exactly."  <u>Cole v. Kimberly-Clark Corp.</u>, 102
F.3d 524, 532 (Fed. Cir. 1996) (citing <u>Johnston</u>, 885 F.2d at 1580).
A device infringes a patent claim under the doctrine of equivalents
if it contains "each limitation of the claim or its equivalent."
<u>Eagle Comtronics, Inc. v. Arrow Communications Labs., Inc.</u>, 305
F.3d 1303, 1315 (Fed. Cir. 2002) (citing <u>Warner-Jenkins Co. v.
Hilton Davis Chem. Co.</u>, 117 S. Ct. 1040, 1054 (1997)).  "An element
in the accused product is equivalent to a claim limitation if the
differences between the two are 'insubstantial' to one of ordinary
skill in the art."  <u>Id.</u>

     Two limitations on the doctrine of equivalents are relevant in
this case.  First, a doctrine known as the "all-limitations rule"
requires that the doctrine of equivalents be applied on an element-
by-element basis.  <u>Warner-Jenkinson Co.</u>, 117 S. Ct. at 1054.  In

other words, a claim limitation cannot be "totally missing from the accused device." DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1332 (Fed. Cir. 2001). However, a "'[o]ne-to-one correspondence of components is not required . . . .'" Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1320 (Fed. Cir. 1998) (quoting Sun Studs, Inc. v. ATA Equip. Leasing Inc., 872 F.2d 978, 989 (Fed. Cir. 1989)). Therefore, if separate claim limitations are "combined into a single element of the accused device," the accused device may still infringe under the doctrine of equivalents so long as the differences between the claim elements and the single element of the accused device are "insubstantial." Eagle Comtronics, 305 F.3d at 1317.

Second, the doctrine of prosecution history estoppel prohibits the patent holder from asserting that certain subject matter is equivalent to a claim element if that subject matter was surrendered during the prosecution of the patent. Id. at 1315-16. The estoppel may be based on an argument made by the patent holder during prosecution in support of patentability -- for example, to distinguish the claimed invention from a particular prior art reference. Id. at 1316 (citing Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 979 (Fed. Cir. 1999); Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1583 (Fed. Cir. 1995)). If such an argument-based estoppel is found to apply to a particular claim limitation, it will apply to all claims in the same patent in which

-13-

that limitation appears.  <u>Id.</u> (citing <u>Southwall Techs.</u>, 54 F.3d at 1584).    For   argument-based  estoppel   to  apply,  "the  prosecution history must evince a 'clear and unmistakable surrender of subject matter.'"    <u>Id.</u>  (quoting  <u>Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.</u>, 170 F.3d 1373, 1377 (Fed. Cir. 1999)).

>    2.    <u>Absence of "Lower Spring Retainer"</u>

Safoco  alleges  that  348  of  Cameron's  valve  actuators  infringe certain  claims  of  the  asserted  patents.[44]    Cameron  seeks  partial summary judgment that 332 of these accused devices do not infringe claim 3 of the '605 patent because they do not have a "lower spring retainer."[45]    More  specifically,  Cameron  contends  that  256  of  the accused  devices  have  never  had  a  lower  spring  retainer,  and  thus, have  never  infringed.[46]    As  for  the  other  76  accused  devices, Cameron  asserts  that  they  formerly  included  a  lower  spring retainer, but that "Cameron began implementing a design change as of May 19, 2003, to remove the lower spring retainer."[47]

Cameron's  argument  hinges  on  its  contention  that  the  lower spring retainer described in claim 3 of the '605 patent is and must

---

[44]Cameron's MSJ, Docket Entry No. 213, at 1.

[45]<u>Id.</u>    Claim  3  of  the  '605  patent  includes  a  limitation requiring  "a  bonnet  assembly  including  .  .  .  a  <u>lower  spring retainer</u> coaxially surrounding said bonnet housing . . . ."  '605 patent, 8:40, 8:66-67 (emphasis added).

[46]Cameron's MSJ, Docket Entry No. 213, at 2.

[47]<u>Id.</u>

be a separate and distinct structure. Safoco does not dispute Cameron's assertion that the accused devices do not include a separate and distinct lower spring retainer structure.[48]   The parties agree that in the relevant accused devices, the lower end of the spring rests directly on what Cameron calls an "adapter plate" or "base plate," which performs other functions in addition to retaining the lower end of the spring.[49]  Therefore, if Cameron's interpretation of the lower spring retainer element of claim 3 is correct, it would be entitled to summary judgment.

Safoco contends that claim 3 of the '605 patent does not require a separate lower spring retainer. Moreover, Safoco asserts that the "base plate" found in the accused devices performs the same function as and satisfies all the limitations of the '605 patent's lower spring retainer element.   That is the case, according to Safoco, even though the base plate is not a separate and distinct structural element specifically designated as a lower spring retainer, and may serve more than one purpose and/or satisfy more than one element of claim 3 of the '605 patent.  Therefore, according to Safoco, the base plate structure present in Cameron's devices reads either literally or through the doctrine of equivalents onto the lower spring retainer element of claim 3 of the '605 patent.

---

[48]See Safoco's Response, Docket Entry No. 222, at 1-15.

[49]Cameron's MSJ, Docket Entry No. 213, at 6; Safoco's Response, Docket Entry No. 222, at 1.

Cameron counters that the accused devices cannot literally read onto the lower spring retainer element of the '605 patent[50] because the specification and drawings of the '605 patent make clear that the term "lower spring retainer" must be understood as a discrete structure.   Cameron also invokes the doctrine of prosecution disclaimer and argues that because Safoco represented during the reexamination of the '605 patent that the claimed "lower spring retainer" was a separate and distinct structure, it cannot now attempt to broaden the definition of "lower spring retainer" to encompass structures that are not separate and distinct spring retainer structures.[51]

Cameron further asserts that finding infringement under the doctrine of equivalents would violate the all-elements rule because it would completely eliminate the lower spring retainer element.[52] Finally, Cameron contends that Safoco is precluded under the doctrine of prosecution history estoppel from arguing that the base plate structure in Cameron's accused devices is the equivalent of the lower spring retainer as claimed in the '605 patent because Cameron distinguished prior art references during reexamination of

---

[50]Cameron's MSJ, Docket Entry No. 213, at 4-5, 9-10.

[51]Id. at 5, 8, 11-13.   Prosecution disclaimer is a claim construction doctrine that considers "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."   Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005).   If the inventor so limited the invention during prosecution, the court must define the claim term so as to exclude any subject matter that was excluded or disclaimed.   See id.

[52]Cameron's MSJ, Docket Entry No. 213, at 10-11.

the '605 patent on the basis that they did not have a discrete lower spring retainer structure.[53]

     a.   Claim Construction

Claim 3 of the '605 patent includes a limitation requiring "a bonnet assembly including . . . a lower spring retainer coaxially surrounding said bonnet housing . . . ."[54]  In Judge Johnson's Markman opinion, which the court adopted, she evaluated the term "lower spring retainer."[55]  The parties, however, did not actually disagree as to the meaning of the term "lower spring retainer."[56] Therefore, the court did not define it.[57]  Instead, the parties disputed, and the court decided, whether certain limitations related to the lower spring retainer that are indisputably present

---

[53]Id. at 11–13.

[54]'605 patent, 8:40, 8:66–67.

[55]See Report and Recommendation on Claim Construction, Docket Entry No. 94, at 44–54.

[56]Id. at 45 ("The parties are not arguing as to the definition of the specific terms 'upper/lower spring retainer.'  . . .  The construction issue before the court is one of limitation.  The parties are not disputing that the '531 patent calls for separate and rotatable upper and lower spring retainers.  The question is whether the subsequent descendant patents ('605, '704, and '986) are to be construed to include said limitations when such language is excluded from the patent claims.").

[57]Id. at 53 ("[T]he court is not actually defining 'spring retainer.'  The court is determining whether certain limitations present in the parent patent and not in the descendant patents nevertheless limit the claims of those descendant patents."). Since not specifically defined, the term "lower spring retainer" should be understood to "carr[y] its ordinary and customary meaning." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002).

in claims of the '531 patent -- namely that the lower spring retainer be "separate and rotatable" -- are also present in the claims of the descendant patents, including the '605 patent, even though the language of the relevant claim elements varies between the '531 patent and the descendant patents.[58]

Cameron argued that because the '531 patent -- the parent of the '605 patent -- requires the lower spring retainer to be a separate and rotatable structure, its descendant patents must also include this limitation because claim terms should generally be interpreted consistently across related patents.  Cameron also invoked the doctrine of prosecution disclaimer, asserting that because Safoco, during prosecution of the '531 parent patent, specifically distinguished the invention claimed in the '531 patent from the prior art based on those two limitations, those limitations must also be present in the descendant patents.  The Magistrate Judge, however, rejected these arguments.

After reviewing the specification and prosecution history of the patents in question, and pointing out material differences in the text of the relevant claim elements, the Magistrate Judge concluded that a person of ordinary skill in the art would not understand the term ". . . lower spring retainer," as used in the descendant patents, "to include the separate and rotatable

_____

[58]Report and Recommendation on Claim Construction, Docket Entry No. 94, at 45.  The '531 patent requires "a bonnet assembly including . . . a lower spring retainer coaxially surrounding said bonnet housing and rotatable relative to said bonnet housing . . . ."  '531 patent, Reexamination Certificate, 2:32, 2:62-64 (emphasis added).

-18-

limitations" unless the patents "specifically included such language," as the '531 patent does.[59]   The Magistrate Judge then considered Cameron's prosecution disclaimer argument and evaluated whether disclaimers as to the scope of the lower spring retainer term made by Safoco during the prosecution of the '531 patent could apply to limit the construction of the lower spring retainer term as used in the descendant patents.   See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc., 473 F.3d 1173, 1182 (Fed. Cir. 2006) (explaining the doctrine of prosecution disclaimer and when a parent patent's prosecution history may inform the construction of descendant patents).

"[T]he doctrine of prosecution disclaimer generally does not apply when the claim term in the descendant patent uses different language."   Id.   Therefore, because the language of the lower spring retainer element in the '531 patent claims and the corresponding element in the '605 patent claims is materially different, the Magistrate Judge concluded that "the '531 prosecution history is inapplicable to the construction of '. . . lower spring retainer' in the '605 . . . patent[]."[60]   Accordingly, the court refused to impart the separate and rotatable limitations on the lower spring retainer element of the '605 patent.[61]

_____

[59]Report and Recommendation on Claim Construction, Docket Entry No. 94, at 49.

[60]Id. at 54.

[61]Id.

Cameron now, at the summary judgment stage, seeks to rehash these claim construction arguments.[62]  Cameron again contends that the court should construe the lower spring retainer element of claim 3 of the '605 patent to include the "separate" limitation.

To the extent that Cameron argues that the specification, drawings, and/or claim language of the '605 patent would inform one of ordinary skill in the art that the lower spring retainer described in claim 3 must be a separate and distinct structure, the Magistrate Judge has already addressed and rejected this argument. The court adopted the Magistrate Judge's opinion, and will not revisit this issue.[63]

_____

[62]The court is not impressed by Cameron's attempts to re-litigate claim construction issues.  The first three of Cameron's four partial motions for summary judgment involve veiled attempts to relitigate claim construction issues and/or involve arguments that should have been raised during claim construction.

[63]The court is not persuaded by Cameron's argument that Safoco's own expert, presumably one of ordinary skill in the art, would understand claim 3 of the '605 patent to require a separate lower spring retainer.  See Cameron's MSJ, Docket Entry No. 213, at 10.  Cameron cites to the report of Safoco's expert, where he differentiates a prior art reference on the basis that it lacks a "separate lower spring retainer."  Expert Report of George Moran, P.E., Regarding Patent Validity Issues, at 6 (April 3, 2009) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 19). The context of the statement, however, does not clearly indicate that the statement relates to the '605 patent.  Moran was broadly differentiating all of the patents at issue in this case from the prior art reference, so this statement may only be applicable to the '531 patent, which indisputably requires a separate lower spring retainer.  Moreover, Safoco included a Declaration by Moran in its response brief in which Moran explained that this statement in his report "should have read, 'there is no separate rotatable lower spring retainer.'  I inadvertently omitted the word (continued...)

To the extent that Cameron argues that the prosecution history of the '531 patent applies to limit the construction of the '605 patent through the doctrine of prosecution disclaimer because the '531 patent is the parent to the '605 patent, the Magistrate Judge has already addressed and rejected this argument as well.  Again, the court agrees with the Magistrate Judge's conclusion, and will not revisit the issue.

Cameron does, however, raise one new claim construction argument not raised during the <u>Markman</u> proceedings.  Cameron now seeks to invoke the doctrine of prosecution disclaimer based on the prosecution history of the '605 patent itself.  Specifically, Cameron contends that during the reexamination of the '605 patent Safoco distinguished certain prior art references from the technology claimed in the '605 patent on the basis that the prior art lacked a separate lower spring retainer.  Cameron asserts that Safoco thereby narrowed the scope of the lower spring retainer element in the '605 patent such that an accused device cannot infringe unless it has a separate lower spring retainer.  Moreover, Cameron contends that the USPTO demonstrated during the reexamination that it understood the '605 patent claims to require a separate lower spring retainer.

---

[63](...continued)
'rotatable' from my statement." Declaration of George Moran, P.E., ¶ 6 (June 19, 2009) (emphasis added) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 1).

-21-

### i.   Background on USPTO's Reexamination of the '605 Patent

During the reexamination of the '605 patent the Examiner found that United States Patent No. 4,575,207 ("'207 patent") raised "substantial new questions of patentability as to claims 1-3 of the ['605] patent."[64]   The '207 patent discloses a valve actuator known as the W-K-M Pow-R-Gard Actuator ("W-K-M").[65]   Additionally, the Examiner rejected claims 1 and 2 of the '605 patent, based in part on a prior art reference known as the RD-Presco-Dyne Rolling Diaphragm Valve Actuator; Pneumatically Powered with Spring Return ("PDDA").[66]   Importantly, the W-K-M and the PDDA are similar to Cameron's accused devices in that they both lack a separate lower spring retainer structure; instead, they are configured with a spring resting directly on a base plate.[67]

### ii.   USPTO's Understanding of the Term "Lower Spring Retainer" During Reexamination of the '605 Patent

With regard to the PDDA, the Examiner stated in the July 29, 2003, office action announcing the rejection of claims 1 and 2 that

---

[64]Response to Office Action Dated July 29, 2003, at 4, Inter Partes Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (Oct. 21, 2003) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 17).

[65]Id. at 4-5.

[66]Id. at 5.

[67]See Declaration of Eric S. Wehner in Support of Defendant Cameron's Motion for Summary Judgment of No Infringement and Invalidity, at ¶¶ 31-32, 36 (May 29, 2009) (included in Cameron's MSJ, Docket Entry No. 213).

the "PDDA discloses the lower end of the spring . . . resting on an adapter piece connected to the top of the bonnet and fails to disclose a lower spring retainer coaxially surrounding said bonnet housing."[68]   Cameron asserts that this statement demonstrates that the USPTO understood the PDDA to lack a lower spring retainer as claimed in the '605 patent because it did not have a separate or discrete spring retainer structure at the lower end of the spring. As Safoco explains, however, the BPAI's opinion on appeal from the Examiner's decision makes clear that the Examiner's statement was not based on the PDDA's lack of a discrete spring retainer structure.

In its opinion reversing in part the Examiner's decision in the '605 patent reexamination, the BPAI stated that "[Cameron] has not even acknowledged the Examiner's finding that PDDA's <u>base ring</u> . . . does not coaxially surround the bonnet housing, let alone point to any error in that finding."[69]   This statement reveals that the USPTO viewed the base ring of the PDDA, although not a separate structure solely for retaining the lower end of the spring, as a lower spring retainer, or the equivalent thereof.   Moreover, it

_____

[68]Office Action in <u>Inter Partes</u> Reexamination, at 5, <u>Inter Partes</u> Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (July 29, 2003) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 20).

[69]<u>Cameron Int'l Corp. v. Safoco Inc.</u>, Appeal Nos. 2008-0750 & 2008-0988, slip op. at 58 (B.P.A.I. Dec. 4, 2008) (emphasis added) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21E).

shows that the USPTO differentiated the PDDA's lower spring retainer from the '605 patent's lower spring retainer on the basis that the PDDA's lower spring retainer "does not <u>coaxially surround</u> the bonnet housing,"[70] not because the PDDA lacks a lower spring retainer altogether. Accordingly, contrary to Cameron's assertion, the record does not indicate that the USPTO understood the '605 patent claims to require a discrete or separate lower spring retainer.

### iii. Safoco's Representations Regarding the Term "Lower Spring Retainer" During Reexamination of the '605 Patent

In response to the Examiner's reexamination findings, Safoco submitted a response stating that the two prior art references, W-K-M and PDDA, had already been considered by the USPTO during the prosecution of the '605 patent and its parent patents and, therefore, were not proper bases for finding new questions of patentability upon reexamination.[71] Specifically, Safoco stated that "[b]oth the PDDA and the W-K-M Pow-R-Gard Actuator were discussed in detail as they relate to patentability" during prosecution.[72] In support of its assertion that these prior art references had already been considered, Safoco attached to its

---

[70]<u>Id.</u> (emphasis added).

[71]Response to Office Action Dated July 29, 2003, at 5-6, <u>Inter Partes</u> Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (Oct. 21, 2003) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 17).

[72]<u>Id.</u> at 5.

response two exhibits designated as Exhibit A and Exhibit B.[73] These exhibits were copies of responses to office actions submitted by Safoco to the USPTO in 1996 and 1997, respectively, during the prosecution of the '531 patent, the parent to the '605 patent.[74] In both office action responses, Safoco distinguished several prior art references, including W-K-M and PDDA, from the invention claimed in the '531 patent.[75]

Cameron focuses on representations made in the office action response designated as Exhibit B. In the Exhibit B office action response, particularly in two tables designated as Table 3 and Table 4, Safoco made representations that the W-K-M, PDDA, and other similar prior art references differed from the invention claimed in the '531 patent on the basis that they did not include a "[s]econd spring retainer ('LSR') coaxially surrounding bonnet housing."[76] Cameron points out that these prior art devices do not have separate lower spring retainer structures and that in each of them the spring rests directly on a base plate or similar structure.[77] Cameron argues that the drawings of these prior art

---

[73]See Safoco's Response, Docket Entry No. 222, at Exhibit 18 (including excerpts from Exhibit A); id. at Exhibit 19 (including excerpts from Exhibit B); Cameron's MSJ, Docket Entry No. 213, at Exhibit 8 (including Exhibit B in its entirety).

[74]See id.

[75]See id.

[76]See Cameron's MSJ, Docket Entry No. 213, at Exhibit 8, at Exhibit B, at 55, 62.

[77]Id. at 8, 11-13; Declaration of Eric S. Wehner in Support of Defendant Cameron's Motion for Summary Judgment of No Infringement (continued...)

devices also show that all but perhaps one of them have base plates that coaxially surround their bonnet housings.[78] Therefore, Cameron contends that Safoco could only have been differentiating them from the claimed invention on the basis that they lack lower spring retainers altogether; that is that they lack separate and distinct lower spring retainer structures.[79]

Cameron asserts that by attaching Exhibit B to its response to the '605 reexamination office action response, Safoco took the position that the invention claimed in the '605 patent differed from these prior art references in all the same ways that the '531 invention does, and therefore, implicitly, that the "lower spring retainer" as claimed in the '605 patent is a separate and distinct structure, as it is in the '531 patent. Cameron argues that Safoco is bound by those representations with regard to the '605 patent, and therefore, that the term "lower spring retainer" as used in claim 3 of the '605 patent must be interpreted to require a separate and distinct structure.

The court is not persuaded by Cameron's argument. The distinctions drawn by Safoco in Exhibit B were clearly between the

---

[77](...continued)
and Invalidity, at ¶¶ 31-32, 36-41 (May 29, 2009) (included in Cameron's MSJ, Docket Entry No. 213).

[78]Cameron's Reply, Docket Entry No. 225, at 2-8. Cameron accepts for the sake of argument Safoco's contention that the PDDA's base plate does not coaxially surround its bonnet housing. See id. at 2.

[79]Id. at 2-8.

invention claimed in the '531 patent and prior art, and were made during the prosecution of the '531 patent.[80]  The distinctions were not, at the time originally proffered by Safoco, between the invention claimed in the '605 patent and prior art.   More importantly, Safoco never later asserted or represented that these distinctions applied to or were true for the claims of the '605 patent.

"[F]or prosecution disclaimer to attach . . . the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable."  Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).  Safoco did not clearly and unmistakably state that all of the representations made in Exhibit B were equally applicable to the invention claimed in the '605 patent.  When the full context of Safoco's office action response in the '605 reexamination is evaluated, it is clear and unmistakable only that Safoco attached Exhibit B to support its assertion that the USPTO had already considered the W-K-M and PDDA references during the prosecution of the '605 patent and/or its parent patents.[81]  It assumes too much to find that Safoco was

---

[80]Importantly, as explained above, the '531 patent indisputably requires a separate lower spring retainer.  The court concluded in its Markman ruling that, unlike the '531 patent, the '605 patent does not include the limitation that the lower spring retainer be a separate structure.

[81]See Response to Office Action Dated July 29, 2003, at 4-6, Inter Partes Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (Oct. 21, 2003) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 17).

asserting that each and every distinction drawn in Exhibit B between the prior art and the '531 patent claims applies equally to the '605 patent claims. Accordingly, the court will not change its claim construction ruling regarding the "lower spring retainer" element of claim 3 of the '605 patent based on Cameron's prosecution disclaimer argument.

### b.   Literal Infringement

Cameron contends that claim 3 of the '605 patent includes as an element a lower spring retainer. Cameron argues that its accused devices lack a lower spring retainer. Cameron's argument, however, assumes that claim 3 requires a <u>separate</u> lower spring retainer. As explained above, properly construed, claim 3 does not require that the lower spring retainer be a separate and distinct structural component. Safoco has offered evidence that the structural component known as the "base plate" or "adapter plate" in Cameron's accused devices literally reads onto claim 3's lower spring retainer element.[82]  Accordingly, summary judgment of no literal infringement is not appropriate.

### c.   Infringement Under the Doctrine of Equivalents

Cameron asserts that the accused devices cannot infringe under the doctrine of equivalents because such a finding would violate the all-elements rule and the principle of prosecution history

---

[82]<u>See</u> Safoco's Response, Docket Entry No. 222, at 1; Declaration of George Moran, P.E., at ¶ 6 (June 19, 2009) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 1).

estoppel.   Cameron argues that a finding that the base plate
component of its accused devices is the equivalent of the lower
spring retainer would eliminate the lower spring retainer element
in its entirety.  See Warner-Jenkinson, 117 S. Ct. at 1049 ("It is
important to ensure that the application of the doctrine [of
equivalents], even as to an individual element, is not allowed such
broad play as to effectively eliminate that element in its
entirety.").  The court disagrees.  It is well established that the
all-elements rule does not require a "'[o]ne-to-one correspondence
of components'"   Ethicon Endo-Surgery, Inc., 149 F.3d at 1320
(quoting Sun Studs, Inc., 872 F.2d at 989).  Separate claim
limitations may be "combined into a single element of the accused
device" so long as the differences between the claim elements and
the single element of the accused device are "insubstantial."
Eagle Comtronics, 305 F.3d at 1317.  Safoco has submitted evidence
suggesting that the base plate component of the accused devices
literally reads on or is the equivalent of multiple claim elements
of claim 3 of the '605 patent, including the lower spring retainer
element.[83]  Accordingly, summary judgment is not appropriate on the
basis of the all-elements rule.

Cameron's argument for application of the doctrine of
prosecution history estoppel is essentially the same as its
argument in support of the doctrine of prosecution disclaimer for

---

[83]See Declaration of George Moran, P.E., at ¶ 6 (June 19, 2009)
(included in Safoco's Response, Docket Entry No. 222, at
Exhibit 1).

claim construction purposes.  Cameron contends that Safoco, by attaching Exhibit B to its office action response during the reexamination of the '605 patent, represented to the USPTO that each of the differences between the '531 patent claims and the listed prior art references identified in Exhibit B were equally applicable for the '605 patent claims.  Cameron asserts that in Exhibit B Safoco differentiated prior art references on the basis that they lack a separate and distinct lower spring retainer structure.  Therefore, Cameron argues that Safoco cannot now argue that an accused device lacking a separate and distinct lower spring retainer structure infringes under the doctrine of equivalents.

"To invoke argument-based [prosecution history] estoppel, the prosecution history must evince a 'clear and unmistakable surrender of subject matter.'" Eagle Comtronics, 305 F.3d at 1316 (quoting Pharmacia & Upjohn, 170 F.3d at 1377).  This is the same standard that applies to trigger the claim construction doctrine of prosecution disclaimer. Cordis Corp. v. Medtronics Ave, Inc., 511 F.3d 1157, 1177 (Fed. Cir. 2008); Omega Engineering, 334 F.3d at 1326 n.1.  As the court has explained above, Safoco did not clearly and unmistakably adopt each of the specific representations made in Exhibit B as applicable to the '605 patent claims.  Safoco merely attached Exhibit B to show that certain prior art references had been considered by the USPTO during the prosecution of the '605 patent or its parent patent.  Accordingly, the doctrine of

prosecution history estoppel does not apply to narrow the scope of potential equivalents with regard to the lower spring retainer element of claim 3 of the '605 patent.  The base plate component of the accused devices is not foreclosed from consideration as an equivalent to the lower spring retainer element of the '605 patent on the basis that it is not a separate and distinct structure included in the devices solely and specifically to serve as such.

    3.   <u>Absence of "Upper Spring Retainers . . . Coaxially Surrounding . . . Bonnet Stem"</u>

All claims of the '531 patent and the '605 patent include as an element "a bonnet assembly including . . . a[n] upper spring retainer . . . coaxially surrounding . . . [the] bonnet stem."[84] Cameron asserts that it is entitled to partial summary judgment that none of its accused devices infringe, either literally or under the doctrine of equivalents, any of the claims of the '531 patent or the '605 patent because none of the accused devices have an upper spring retainer that coaxially surrounds the bonnet stem.[85] Cameron argues that the "coaxially surrounding" limitation is not satisfied in its accused devices because the upper spring retainers and the bonnet stems therein do not vertically overlap with each

_____

[84]'531 patent; '605 patent.

[85]Cameron does not assert that its accused devices lack an upper spring retainer element or a bonnet stem element.  It bases its non-infringement argument only on the spatial relationship between those two components in the accused devices.

other.   In other words, no part of the upper spring retainer is
located in the same horizontal plane as any part of the bonnet
stem.[86]

Cameron's non-infringement arguments hinge on the meaning of
the term "coaxially surrounding" as used in the '605 and '531
patents.[87]   Cameron contends that the term must be understood to
require one structural element to vertically overlap with the other
structural element.

In support of its preferred construction, Cameron makes two
arguments.   First, Cameron argues that Safoco, through statements

---

[86]The drawing of one of Cameron's accused devices, which
Cameron contends is representative of all accused devices in this
respect, seems to support Cameron's assertion regarding the spatial
relationship between the upper spring retainer and the bonnet stem
in its accused devices.   See Declaration of Eric S. Wehner in
Support of Defendant Cameron's Motion for Summary Judgment of No
Infringement and Invalidity, at ¶ 51 (May 29, 2009) (included in
Cameron's MSJ, Docket Entry No. 213).   Furthermore, Safoco does not
contest Cameron's assertions regarding the spatial relationship
between the two elements.   Accordingly, the court accepts for the
purposes of this analysis that the upper spring retainer and the
bonnet stem do not vertically overlap in the accused devices.

[87]The parties did not contest the meaning of the term
"coaxially surrounding" or ask the court to define the term during
the Markman proceedings.   See Report and Recommendation on Claim
Construction, Docket Entry No. 94.   Therefore, the court did not
define it.   The court did, however, define the term "base ring
coupled to and coaxially surrounding the bonnet housing." Id. at
42-44.   The court defined the term as "base ring joined to and
positioned around a common axis of the bonnet housing." Id. at 44.
However, as the Magistrate Judge explained, "the parties [did] not
argue[] as to" the meaning of "coaxially surrounding," and "the
primary construction issue" was whether the definition should
include a limitation that the base ring be joined to the bonnet
housing "through intervening separate elements." Id. at 43.

made by its technical expert, George Moran, in a report prepared for this litigation, has taken the position that the term "coaxially surrounding" requires vertical overlap.   In his report in support of the validity of Safoco's patents, Moran distinguished Safoco's patented subject matter from the PDDA -- a particular prior art reference -- on the basis that PDDA's base plate[88] "does not coaxially surround[89] the bonnet housing."[90]   Cameron asserts that drawings of the PDDA indicate that there is no vertical overlap between the PDDA's base plate and its bonnet housing.[91]   Therefore,

---

[88]The PDDA's "base plate" is a structural element alleged by Safoco to literally read onto the claimed inventions' lower spring retainer element, or to be the equivalent thereof.

[89]All of the claims in the '531 patent and the '605 patent require a lower spring retainer that coaxially surrounds the bonnet housing.   See '531 patent; '605 patent.

[90]Expert Report of George Moran, P.E., Regarding Patent Validity Issues, at 11-14, 17, 21 (April 3, 2009) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 19).   Moran did not use the term "base plate," but instead referred to the base plate as the "spring plate," "spring retainer," or "lower spring retainer."   It is clear from the context, however, that Moran was referring to the element of the PDDA that the court is referring to as the "base plate."   Moreover, Moran sometimes followed references to the "spring retainer" or "lower spring retainer" with the notation "(64)."   In the drawings of the PDDA provided by Cameron, the element that the court is referring to as the "base plate" is labeled as element number 64.   See Cameron's MSJ, Docket Entry No. 213, at 7; Declaration of Eric S. Wehner in Support of Defendant Cameron's Motion for Summary Judgment of No Infringement and Invalidity, at ¶ 52 (May 29, 2009) (included in Cameron's MSJ, Docket Entry No. 213).

[91]Cameron's MSJ, Docket Entry No. 213, at 15; Declaration of Eric S. Wehner in Support of Defendant Cameron's Motion for Summary Judgment of No Infringement and Invalidity, at ¶ 52-53 (May 29, 2009) (included in Cameron's MSJ, Docket Entry No. 213).

Cameron contends that Moran's assertion that the PDDA's base plate does not coaxially surround the bonnet housing is based on the lack of vertical overlap.[92]

Moran's statement was made in the context of arguing that the patents at issue are valid over the prior art.  Cameron cites to precedent for the proposition that "claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."  SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 882 (Fed. Cir. 1988).  Cameron therefore contends that Safoco must, for the purposes of analyzing infringement, be held to its position that the term "coaxially surrounding" requires vertical overlap.

Second, although not clearly articulated as such, Cameron raises a prosecution disclaimer argument.  Cameron contends that during the '605 patent reexamination Safoco asserted the same distinction between the patented invention and the PDDA reference -- that is that the PDDA's base plate does not coaxially surround its bonnet housing, whereas the claimed invention's lower spring retainer does coaxially surround its bonnet housing.  Specifically, in its Respondent's Brief to the BPAI during the '605 patent reexamination proceeding Safoco stated in reference to the PDDA, "[t]he base plate rests on top of a bonnet housing . . . and therefore cannot coaxially surround the bonnet housing."[93]

_____

[92]Id.

[93]Respondent's Brief, at 10, Inter Partes Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (January 12, 2006) (included in Cameron's Reply, Docket Entry No. 225, at Exhibit 2).

Cameron contends that this statement amounted to a representation that the "coaxially surrounding" limitation necessarily connotes vertical overlap. Cameron argues that Safoco cannot now seek to broaden the scope of "coaxially surrounding" to encompass devices in which there is no vertical overlap between two structures that are required to have a "coaxially surrounding" spatial relationship. See Omega Engineering, 334 F.3d at 1323 (describing the doctrine of prosecution disclaimer as "precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution").

In response to this non-infringement argument, Safoco first moves to strike this section of Cameron's summary judgment motion. Safoco contends that the court should strike this portion of Cameron's summary judgment motion because Cameron has not previously presented or disclosed this particular infringement defense. According to Safoco, Cameron should have disclosed this theory of non-infringement in its expert's report, answers to interrogatories, or in the previous round of summary judgment motions.

Safoco, however, does not provide any authority or precedent for granting such a motion to strike. See S.D. Tex. R. 7.1.B. (requiring that any motion "[i]nclude or be accompanied by authority"). Moreover, as explained below, the court is not persuaded by Cameron's claim construction argument and will not grant Cameron's summary judgment motion on this basis. Therefore,

-35-

Safoco will not be unduly prejudiced.  Accordingly, the court will deny Safoco's motion to strike.

Safoco also challenges the merits of Cameron's construction of the term "coaxially surrounding."  Safoco first points out that Figure 1 in the specification of the '531 and '605 patents clearly shows an upper spring retainer and a bonnet stem that do not vertically overlap.[94]  Therefore, if the court were to adopt Cameron's proposed construction of "coaxially surrounding," the embodiment of the invention depicted in Figure 1 would not read onto the patent claims.  A claim construction that would result in a preferred embodiment in the specification falling outside the scope of the patent is "rarely, if ever, correct." <u>Vitronics Corp. v. Conceptronics, Inc.</u>, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  The court should not adopt such an interpretation absent "highly persuasive evidentiary support."  <u>Id.</u>

The court does not find such "highly persuasive evidentiary support" for Cameron's proposed interpretation.  Most notably, Safoco never identified the lack of vertical overlap as its reason for asserting that the PDDA's base plate does not coaxially surround its bonnet housing.  Instead, Cameron merely assumes that the absence of vertical overlap was Safoco's reason for asserting that the PDDA's base plate does not coaxially surround its bonnet housing.

--------

[94]<u>See</u> '531 patent, sheet 1; '605 patent, sheet 1.

In Safoco's expert report produced for this litigation, Moran states that the PDDA's base plate "does not coaxially surround the bonnet housing."[95]  There is no mention of vertical overlap or lack thereof.  In Safoco's Respondent's Brief to the BPAI submitted during the '605 patent reexamination Safoco stated only that "[t]he base plate rests on top of a bonnet housing . . . and therefore cannot coaxially surround the bonnet housing."[96]  Again, this statement does not <u>clearly</u> identify lack of vertical overlap as its basis.  Moreover, although this statement is not inconsistent with Cameron's argument that "coaxially surrounding" connotes vertical overlap, it does not <u>necessarily</u> support Cameron's argument.  In other words, as explained below, there is at least one plausible definition of "coaxially surrounding" that does not require vertical overlap, but that is still consistent with Safoco's statements regarding the spatial relationship between the PDDA's base plate and bonnet housing.

Safoco offers a definition for "coaxially surrounding" that is consistent with both the patent specification, the prosecution history, and Moran's statements in his report.  Safoco argues that a structural element coaxially surrounds another if (1) both

---

[95]Expert Report of George Moran, P.E., Regarding Patent Validity Issues, at 11-14, 17, 21 (April 3, 2009) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 19).

[96]Respondent's Brief, at 10, <u>Inter Partes</u> Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (January 12, 2006) (included in Cameron's Reply, Docket Entry No. 225, at Exhibit 2).

elements have a circumferential relationship with a common axis, and (2) the surrounding element's smallest inside diameter is larger than the largest outside diameter of the other surrounded structure.[97]  According to Safoco, it is not necessary that there be any vertical overlap between the two elements, so long as if there was vertical overlap, then the surrounding element could encompass the surrounded element.[98]

Figure 1 in the patent specification shows an upper spring retainer with an inside diameter greater than the outside diameter of the bonnet stem.[99]  Moreover, both components are centered upon and in a circumferential relationship with the vertical axis of the actuator device.[100]  There is, however, no vertical overlap of the two components.[101]  Therefore, Safoco's interpretation of the term "coaxially surrounding" would, unlike Cameron's proposed interpretation, not exclude the embodiment of the invention shown in Figure 1 from the scope of the claims.

Safoco's interpretation is also consistent with Safoco's statements regarding the PDDA's base plate.  As Safoco explains, the fact that the PDDA's base plate rests on top of the PDDA's

---

[97]See Safoco's Response, Docket Entry No. 222, at 17-21.

[98]See id.

[99]See '531 patent, sheet 1; '605 patent, sheet 1.

[100]See id.

[101]See id.

bonnet housing demonstrates that the inside diameter of the base plate is not larger than the outside diameter of the bonnet housing.[102]   Therefore, under Safoco's definition, the base plate does not coaxially surround the bonnet housing.

In light of the written description -- particularly the drawings -- and the prosecution history of the '531 and '605 patents, the court concludes that the term "coaxially surrounding" does not require vertical overlap.  Because vertical overlap is not required, Cameron is not entitled to summary judgment on this non-infringement argument.

**B.  Invalidity**

Cameron seeks partial summary judgment that claims 2, 14, and 21 of the '531 patent and claim 3 of the '605 patent are invalid as indefinite under 35 U.S.C. § 112, ¶ 2.  Specifically, Cameron argues that each of these claims includes a limitation for a "securing means" -- which the parties agree is recited in mean-plus-function form pursuant to 35 U.S.C. § 112, ¶ 6 -- but that the patents fail to disclose corresponding structure that is capable of performing the recited function of the securing means.  See Budde v. Harley-Davidson, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001) (explaining that a claim containing a means-plus-function element is invalid as indefinite if "the specification lacks disclosure of structure . . . adequate to perform the recited function").

---

[102]See Safoco's Response, Docket Entry No. 222, at 18-19.

-39-

1.   <u>Claim Language</u>

Claims 2, 14, and 21 of the '531 patent include a claim limitation of a "securing means connected to said bonnet housing in surrounding relationship therewith for longitudinally securing said operator housing to said bonnet housing."[103]   Claim 3 of the '605 patent includes a claim limitation of a "securing means connected to said bonnet housing in surrounding relationship therewith for longitudinally securing said operator housing to said bonnet housing, said securing means including a base ring configured for rotation relative to said bonnet housing without affecting selected bonnet stem drift."[104]

2.   <u>Claim Construction</u>

During the claim construction phase of this litigation the parties agreed that the "securing means" claim limitations described above are stated in means-plus-function format, pursuant to 35 U.S.C. § 112, ¶ 6.[105]   The Magistrate Judge determined, and the parties did not dispute, that the "securing means" limitations recite a function of "longitudinally securing [the] operator housing to [the] bonnet housing."[106]   The parties, however, disputed

---

[103]'531 patent, Reexamination Certificate, 2:58-61, 4:51-54, 7:38-41.

[104]'605 patent, 9:1-6.

[105]Report and Recommendation on Claim Construction, Docket Entry No. 94, at 63 ("Both parties agree that the means-plus-function concept applies.").

[106]<u>Id.</u> at 65.

which structures disclosed in the specification correspond to that function.[107]

Cameron asserted that four structures disclosed in the specification work together to perform the recited function and collectively make up the corresponding structure: (1) the bonnet ring, (2) a screw, (3) the base plate ring, and (4) bolts.[108] Safoco, on the other hand, argued that the corresponding structure consists only of "bolts and/or a base plate ring."[109]   After carefully considering the arguments and evidence presented by the parties, as well as the specification and prosecution history of the patents, the Magistrate Judge concluded that "[o]ne of ordinary skill in the relevant art would understand [1] the base plate ring and [2] the bolts to be the corresponding structure of the securing means."[110]

### 3.   Applicable Law

Paragraph six of 35 U.S.C. § 112 allows a patentee to express an element of a patent claim "as a means or step for performing a specified function without the recital of structure, material or acts in support thereof . . . ."   35 U.S.C. § 112, ¶ 6.   When a patentee states a claim element using this means-plus-function language,   the   claim   element   is   "construed   to   cover   the

---

[107]Id.

[108]Id.

[109]Id.

[110]Id. at 69.

corresponding structure, material, or acts described in the specification and equivalents thereof." Id.

The Federal Circuit has described paragraph six as offering inventors a "quid pro quo." E.g., Budde, 250 F.3d at 1377; Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1381 (Fed. Cir. 1999); B. Braun Med., Inc. v. Abbot Labs. & NP Med., Inc., 124 F.3d 1419, 1424 (Fed. Cir. 1997).  In exchange for allowing the patentee the ease of expressing a claim element simply as a means for performing a specified function, the statute requires that the patentee "set forth in the specification an adequate disclosure showing what is meant by that language." In re Donaldson Co., 16 F.3d 1189, 1195 (Fed. Cir. 1994).  In other words, the patentee must identify the "corresponding structure," 35 U.S.C. § 112, ¶ 6, by clearly linking or associating it with the claimed function in the specification or the prosecution history of the patent.  Budde, 250 F.3d at 1377; B. Braun Med., 124 F.3d. at 1424.  "[F]ailure to disclose adequate structure corresponding to the recited function . . . results in the claim being of indefinite scope, and thus invalid, under 35 U.S.C. § 112, paragraph 2." Budde, 250 F.3d at 1376.

In accordance with these principles, there are two requirements for structure(s) to be considered "corresponding." First, the structure(s) must actually perform the claimed function. Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 296 F.3d 1106, 1113, 1119 (Fed. Cir. 2002).  Second, the specification or the

prosecution history must clearly link or associate the structure(s) with performance of the claimed function.  Id. at 1113; B. Braun Med., 124 F.3d at 1424.

Whether adequate corresponding structure(s) are disclosed must be determined from the perspective of one skilled in the art.  See Cardiac Pacemakers, 296 F.3d at 1113; Atmel Corp., 198 F.3d at 1382.  Therefore, for a claim including a means-plus-function element to be valid, "the corresponding structure(s) . . . must be disclosed in the written description in such a manner that one skilled in the art will know and understand what structure corresponds to the means limitation," Atmel, 198 F.3d at 1382, and one skilled in the art must understand "that the specification of [the] patent disclose[s] structure capable of performing the function recited in the claim limitation." Creo Products, Inc. v. Presstek, Inc., 305 F.3d 1337, 1347 (Fed. Cir. 2002) (citing Budde, 250 F.3d at 1376).

All patents are presumed to be valid.  35 U.S.C. § 282; Budde, 250 F.3d at 1376.  Therefore, "any facts supporting a holding of invalidity must be proved by clear and convincing evidence." Budde, 250 F.3d at 1376.

4.  Analysis

Cameron argues that the structures identified by the court as "corresponding structure" for the "securing means" claim element -- i.e., the base plate ring and the bolts -- are incapable of performing the recited function of longitudinally securing the

-43-

operator housing to the bonnet housing.  Therefore, Cameron contends that claims 2, 14, and 21 of the '531 patent and claim 3 of the '605 patent, each of which contain the "securing means" claim element, are invalid as indefinite.

Safoco counters that Cameron has already raised this argument during claim construction and that the court has considered and rejected it.  Indeed, Cameron asserted during the <u>Markman</u> hearing that the recited function could not be performed in the embodiments of the invention disclosed in the patents absent the bonnet ring and screw.[111]  The Magistrate Judge questioned Cameron extensively about this argument,[112] but ultimately found it unpersuasive.[113]  In its objections to the Magistrate Judge's recommended <u>Markman</u> order, Cameron again asserted that the base plate ring and bolts disclosed in the specification, alone, were not capable of longitudinally securing the operator housing to the bonnet housing.[114]  The court, however, adopted the Magistrate Judge's recommended claim construction without changes.[115]

---

[111]Transcript of <u>Markman</u> Hearing, Docket Entry No. 97, at 160-167.

[112]<u>Id.</u>

[113]<u>See</u> Report and Recommendation on Claim Construction, Docket Entry No. 94, at 69.

[114]Defendant Cameron Int'l Corp.'s Objections to the Report and Recommendations of Claim Construction, Docket Entry No. 102, at 1-6.

[115]Order Adopting Magistrate Judge's Report and Recommendation, Docket Entry No. 105.

Cameron replies that claim construction and invalidity are two distinct issues, and that it is now raising an invalidity argument, not a claim construction argument.  Generally, invalidity is a different issue than claim construction.  But when the court is considering invalidity under § 112, ¶ 2, as the following discussion illustrates, the invalidity analysis "is inextricably intertwined with claim construction."  Atmel Corp., 198 F.3d at 1379 (citing Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998)).

As explained above and in the Magistrate Judge's Markman order, before the court can designate structure(s) as "corresponding," it must first determine that (1) the structure(s) actually perform the claimed function, and (2) the specification or prosecution history clearly links the structure(s) with the designated function.  Cardiac Pacemakers, 296 F.3d at 1113. Moreover, the structure(s) designated as corresponding "must include all structure that actually performs the recited function." Id. at 1119 (emphasis added).  If "no structure disclosed in the embodiments of the invention actually performs the claimed . . . function[], the specification lacks corresponding structure." Id. (emphasis added)  And if the specification lacks corresponding structure(s), the claim is invalid as indefinite.  See id. at 1114 (explaining that claims employing means-plus-function language are invalid "where the specification fails to disclose structure corresponding to the claimed function").

Therefore, a court cannot, as Cameron suggests, define certain structures as "corresponding" during claim construction and then later conclude that the claim is invalid as indefinite because the structures designated by the court as "corresponding" are not capable of performing the recited function.  These two conclusions are mutually exclusive.  Either there is "corresponding structure" or the claim is invalid as indefinite.

Accordingly, in this case, when the court adopted the Magistrate Judge's conclusion that the base plate ring and the bolts were the "corresponding structure of the securing means,"[116] it <u>by definition</u> concluded that the base plate ring and bolts alone were capable of performing the recited function.  Furthermore, the court <u>by definition</u> concluded that the means-plus-function claim elements did not render the claims containing them invalid as indefinite.[117]

---

[116]Report and Recommendation on Claim Construction, Docket Entry No. 94, at 69.

[117]The court acknowledges that the Magistrate Judge's <u>Markman</u> opinion did not explicitly address Cameron's argument that the bonnet ring and screw are necessary for the performance of the recited function.  Instead, the Magistrate Judge's opinion focused on the fact that neither the specification nor the prosecution history of the patents clearly link the bonnet ring or the screw to the recited function.  This does not mean, however, that the Magistrate Judge and this court did not consider Cameron's argument regarding the necessity of the bonnet ring and screw.  The Magistrate Judge and this court, although perhaps only implicitly, concluded that the base plate ring and the bolts alone are actually capable of performing the recited function.  Otherwise, the court would not and could not have designated them as "corresponding structure."

Because this issue was already decided during claim construction, the court need not engage in a lengthy explanation of its reasoning.  The court was not persuaded by Cameron's argument the first time, and Cameron has not presented any new evidence or authority to persuade the court differently now.  The court simply points out that Cameron's argument that the base plate ring and bolts are incapable of performing the recited function, as well as the opinion of its expert in support thereof, are based <u>solely</u> on the drawings included in the patents.[118]  The court, however, has "consider[ed] the specification <u>as a whole</u>, . . . read[ing] all portions of the written description . . . in a manner that renders the patent internally consistent."  <u>Budde</u>, 250 F.3d at 1380-81 (emphasis added).  As the Magistrate Judge's <u>Markman</u> opinion explained, neither the text of the specification nor the prosecution history of the patents link the bonnet ring and the screw to the recited function.[119]  Instead, they link the bonnet ring and screw with other functions.[120]  On the other hand, both the text of the specification and the prosecution history of the patents clearly indicate that the base plate ring and the bolts

_____

[118]<u>See</u> Cameron's MSJ, Docket Entry No. 213, at 17-21; Declaration of Eric S. Wehner in Support of Defendant Cameron's Motion for Summary Judgment of No Infringement and Invalidity, at ¶¶ 57-62 (May 29, 2009) (included in Cameron's MSJ, Docket Entry No. 213).

[119]Report and Recommendation on Claim Construction, Docket Entry No. 94, at 66-68.

[120]<u>Id.</u>

-47-

perform the function of longitudinally securing the operator housing to the bonnet housing.[121]

As Safoco's expert states, "[o]ne skilled in the relevant art would know [from the specification] that the base ring and the bolts perform the function of longitudinally securing the actuator to the valve bonnet."[122]  Therefore, the patents at issue adequately disclose the structure corresponding to the "securing means" claim element.  See Creo Products, 305 F.3d at 1347 (explaining that the focus of a definiteness inquiry for a means-plus-function claim element is "on whether one skilled in the art would have understood that the specification of [the] patent disclosed structure capable of performing the function recited").  Accordingly, the court will deny Cameron's motion for partial summary judgment that claims 2, 14, and 21 of the '531 patent and claim 3 of the '605 patent are invalid.

_____

[121]Id.

[122]Declaration of George Moran, P.E., at ¶ 5 (June 19, 2009) (included in Safoco's Response, Docket Entry No. 222, at Exhibit 1).  To the extent that Moran supports his opinion that the specification adequately discloses the corresponding structure because the specification would enable one of ordinary skill in the art to make and use the invention, the court does not credit it.  See Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 953 (Fed. Cir. 2007) ("The inquiry is whether one skilled in the art would understand the specification to disclose a structure, not simply whether that person would be capable of implementing that structure.").   The court, however, finds persuasive Moran's assertion that one of ordinary skill in the art would understand from the specification that the base plate ring and the bolts are the structures that correspond to the specified function and that they, alone, are capable of performing said function.

-48-

## C.   Willful Infringement

Cameron asserts that it is entitled to partial summary judgment that Safoco, as a matter of law, may not recover enhanced damages for willful infringement of the '531 and '605 patents because (1) the USPTO reexamined the two patents after finding that "a substantial new question of patentability" existed with regard to each patent, see 35 U.S.C. §§ 303(a), 312(a),[123] and (2) Cameron has presented legitimate defenses to Safoco's allegations of infringement.[124]  Safoco responds that the two facts relied upon by Cameron do not, as a matter of law, preclude a finding of willful infringement and presents evidence that it alleges supports its claim for willful infringement.[125]

### 1.   Standard for Willful Infringement

The trial court "may increase the damages [for infringement] up to three times the amount found or assessed."  35 U.S.C. § 284.

---

[123]Section 303 provides the standard for conducting an ex parte reexamination, while § 312 provides the standard for conducting an inter partes reexamination.  The reexamination of the '531 patent was an ex parte reexamination.  See Order Granting Request for Ex Parte Reexamination, at 1-2, Ex Parte Reexamination of U.S. Patent No. 6,089,531, Control No. 90/006,644 (July 15, 2003) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21A).   The reexamination of the '605 patent was an inter partes reexamination. See Order Granting Request for Inter Partes Reexamination, at 1-2, Inter Partes Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (July 29, 2003) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21D).  The standard -- "a substantial new question of patentability" -- is the same for both types of reexamination procedures.  Therefore, for the purposes of analyzing this motion, the differences between the two procedures are not pertinent.

[124]Cameron's MSJ, Docket Entry No. 213, at 21-25.

[125]Safoco's Response, Docket Entry No. 222, at 26-40.

Although the statute does not provide any guidance or standard for when a trial court may or should award enhanced damages, the Federal Circuit has long held that "an award of enhanced damages requires a showing of willful infringement." _In re Seagate Tech., LLC_, 497 F.3d 1360, 1368 (Fed. Cir. 2007).

Until recently, the Federal Circuit espoused a standard for willful infringement that was "akin to negligence." _Id._ at 1371. In its 2007 decision in In re Seagate Technology, LLC, however, the court overruled its old willful infringement standard and held that "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." _Id._

Elaborating on this standard, the court explained that a patentee seeking to recover enhanced damages had to make two showings. First, the patentee "must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." _Id._ "The state of mind of the accused infringer is not relevant to this objective inquiry." _Id._ Second, the patentee must prove "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." _Id._

2. <u>Reexamination</u>

The patent statute, at 35 U.S.C. §§ 303 and 312, provides that the USPTO may reexamine any patent upon a finding that "a

substantial new question of patentability" exists.  On July 15, 2003, the USPTO granted Cameron's request for an <u>ex parte</u> reexamination of the '531 patent, explicitly stating that a particular prior art reference "raise[d] a substantial new question of patentability as to claims 1-32 of the ['531] patent."[126] Similarly, on July 29, 2003, the USPTO granted Cameron's request for an <u>inter partes</u> reexamination of the '605 patent, explicitly stating that a particular prior art reference "raise[d] a substantial new question of patentability as to claims 1-3 of the ['605] patent."[127]  Cameron contends that because the USPTO concluded that there were substantial questions as to the validity of these patents, it could not possibly have acted "despite an objectively high likelihood that its actions constituted infringement of a <u>valid</u> patent."  <u>Seagate</u>, 497 F.3d at 1371 (emphasis added).

     a.   Case Law

In support of its argument Cameron cites two post-<u>Seagate</u> district court decisions.  In <u>Ultratech International, Inc. v. Swimways Corp.</u>, the plaintiffs sued the defendant for infringement

---

[126]Order Granting Request for <u>Ex Parte</u> Reexamination, at 1-2, <u>Ex Parte</u> Reexamination of U.S. Patent No. 6,089,531, Control No. 90/006,644 (July 15, 2003) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21A).

[127]Order Granting Request for <u>Inter Partes</u> Reexamination, at 1-2, <u>Inter Partes</u> Reexamination of U.S. Patent No. 6,250,605, Control No. 95/000,017 (July 29, 2003) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21D).

of a single patent.  <u>Ultratech Int'l, Inc. v. Swimways Corp.</u>,
No. 3:05-cv-134-J-25MCR, slip. op. at 1 (M.D. Fla. March 3,
2009).[128]  Shortly after the litigation was initiated, defendant
sought reexamination of the only patent at issue in the case, and
the USPTO granted the request.  <u>Id.</u> at 2.  The litigation was
stayed pending the reexamination.  <u>Id.</u>  The USPTO initially
rejected all claims, but ultimately issued a reexamination
certificate finding all claims to be patentable.  <u>Id.</u>

A few months after the reexamination was complete, the stay
was lifted and plaintiffs moved to amend their complaint to add a
claim for willful infringement.  <u>Id.</u>  The defendants opposed the
motion to amend on the ground that it was unduly delayed.  <u>Id.</u> at
3.  Plaintiffs countered that they did not have a sufficient
factual basis upon which to assert a willful infringement claim
when the suit was initiated, but later obtained a basis because of
the defendant's continued use of the alleged infringing device
during and after the reexamination proceeding.  <u>Id.</u>  The court
agreed, reasoning without citing any supporting authority that,
"before the Reexamination Certificate issued, allegations that
Defendant's actions were deliberate or reckless would not have
provided sufficient factual or legal grounds because the validity
of the [patent at issue] remained questionable."  <u>Id.</u> at 4-5.
Accordingly, the court allowed the plaintiffs to amend their

_____

[128]A copy of the <u>Ultratech</u> opinion is included in Cameron's
MSJ, Docket Entry No. 213, at Exhibit 21F.

complaint to assert willful infringement only for alleged infringing acts that occurred after the issuance of the reexamination certificate. <u>Id.</u> at 5.

In <u>TGIP, Inc. v. AT&T Corp.</u> a jury returned a verdict for the plaintiff finding, among other things, that the defendant had willfully infringed certain claims of two of plaintiff's patents. <u>TGIP, Inc. v. AT&T Corp.</u>, 527 F. Supp. 2d 561, 578 (E.D. Tex. 2007). The defendant moved for judgment as a matter of law, asserting that no reasonable jury could have found that it willfully infringed the patents at issue under the <u>Seagate</u> standard. <u>Id.</u> The court agreed. <u>Id.</u> at 579. It found that the plaintiff had presented "only a scintilla of the evidence needed to meet the clear and convincing standard." <u>Id.</u> Further, the court reasoned that the defendant could not have acted in an objectively unreasonable manner because, among other reasons, the patentee had requested reexamination of one of the patents, and the USPTO had granted the request and required amendments to the patent before issuing a reexamination certificate. <u>Id.</u>

In addition to these two cases, the court identified three other district court opinions in which a court found that the USPTO's granting of a reexamination request was relevant to the issue of willful infringement. In an opinion issued in October of 2007 in <u>Lucent Technologies, Inc. v. Gateway, Inc.</u>, the district court considered the defendants' motions for partial summary judgment of no willful infringement with regard to several patents.

<u>Lucent Techs., Inc. v. Gateway, Inc.</u>, No. 02-CV-2000-H, 2007 U.S. Dist. LEXIS 95934, at *2-3 (S.D. Cal. Oct. 30, 2007).  As for three of the patents, the court concluded that the plaintiffs had failed to present evidence sufficient to create a genuine issue of material fact as to willful infringement.  <u>Id.</u> at *21, *23.  In support of this conclusion, the court pointed out that the USPTO had granted reexamination requests for the three patents.  <u>Id.</u> at *17-19, *22.  Importantly, however, the court explained that it did "not assume that a reexamination order will always prevent a plaintiff from meeting their [sic] burden on summary judgment regarding willful infringement," but that it considered the reexamination order only "as one factor among the totality of the circumstances."  <u>Id.</u> at *18.  <u>See also</u> <u>id.</u> at *22 (stating that the grant of a reexamination request "weigh[ed] against Plaintiff's position," but was "not controlling").  The court concluded, however, that "a reexamination order may be taken as dispositive with respect to post-filing conduct."  <u>Id.</u> at *18.  <u>See also</u> <u>id.</u> at *22 (stating that the grant of a reexamination request "is enough to overcome a finding of willfulness with respect to post-filing conduct").  In support of this proposition, the court cited the <u>Seagate</u> court's statement that "'[a] substantial question about invalidity or infringement is likely sufficient not only to avoid a preliminary injunction, but also a charge of willfulness based on post-filing conduct.'"  <u>Id.</u> at *19 (quoting <u>Seagate</u>, 497 F.3d at 1374).

-54-

More recently, in St. Clair Intellectual Property Consultants, Inc. v. Matsushita Electronic Industrial Co., the district court issued an opinion ruling on the plaintiff's motion for leave to amend its complaint to, among other things, add allegations of willful infringement against one of the defendants based on the defendant's post-filing conduct.  St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., No. 04-1436-JJF-LPS, 2009 WL 1649675, at *1 (D. Del. June 10, 2009).  The defendant asserted that the plaintiff should not be allowed to add the willful infringement allegations because the plaintiff could not, as a matter of law, satisfy the Seagate willful infringement standard.  Id.  The defendant asserted that the plaintiff could not show willful infringement primarily because the USPTO had granted requests to reexamine the patents at issue.  Id. at *1-2.

The court followed the Lucent court's general rule that the granting of a reexamination request was only one factor among many to be considered in a willful infringement inquiry.  See id. at *2. The court also pointed out that, in the case at bar, the USPTO had issued a reexamination certificate for all patents at issue without amending any of the claims.  Id. (citing the Ultratech decision discussed above for the proposition that a defendant's continued use of an allegedly infringing device after the issuance of a reexamination certificate could reasonably be considered objectively reckless).  Accordingly, the court was unable to conclude that "the addition of a willful infringement claim . . .

-55-

[was] futile," and allowed the plaintiff to amend its complaint. Id.

On the same day, the court that issued the Matsushita opinion issued a similar opinion in St. Clair Intellectual Property Consultants, Inc. v. Palm, Inc., No. 06-404-JJF-LPS, 2009 WL 1649751 (D. Del. June 10, 2009). The plaintiff in that case similarly sought to amend its complaint to add allegations of willful infringement, and the defendant made essentially the same arguments in opposition as the defendant had in Matsushita. See id. at *1. The court stated that "there is no per se rule that reexamination proceedings preclude a plaintiff from asserting a claim for willful infringement," and pointed out that the USPTO had "ultimately issued reexamination certificates for each of the patents-in-suit without any amendment to the claims." Id. Accordingly, the court granted the plaintiff's motion for leave to amend. Id. at *2.

This court agrees with the Matsushita, Palm, TGIP, and Lucent courts to the extent that they concluded that the granting of a reexamination request by the USPTO is only one factor among others that should be considered in evaluating a claim for willful infringement. As the Federal Circuit has recently explained, the USPTO

> considers the standard for reexamination met when 'there
> is a substantial likelihood that a reasonable examiner
> would consider the prior art patent or printed
> publication important in deciding whether or not the
> claim is patentable.' . . . 'Thus, "a substantial new

-56-

question of patentability" as to a patent claim could be
present even if the examiner would not necessarily reject
the claim as either anticipated by, or obvious in view
of, the prior art patents or printed publications.'

Proctor & Gamble Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 848
(Fed. Cir. 2008) (quoting Manual of Patent Examination and
Procedure § 2642 (8th ed. Rev. 7 2008)).  Therefore, the fact that
the USPTO grants a reexamination request is not necessarily strong
evidence that a patent is potentially invalid.

Furthermore, the court is not persuaded that the Lucent court
was correct when it concluded that "a reexamination order may be
taken as dispositive with respect to post-filing conduct." Lucent,
No. 02-CV-2000-H, 2007 U.S. Dist. LEXIS 95934, at *18.  The Lucent
court based this conclusion on a statement made by the Seagate
court that "'[a] substantial question about invalidity or
infringement is likely sufficient not only to avoid a preliminary
injunction, but also a charge of willfulness based on post-filing
conduct.'" Id. at *19 (quoting Seagate, 497 F.3d at 1374).  In
the quoted passage the Seagate court was not discussing the effect
of reexamination on a finding of willful infringement, but was
instead discussing the effect of the denial of a preliminary
injunction. See Seagate, 497 F.3d at 1374.  This distinction is
important -- and undermines the Lucent Technologies court's
reasoning -- because, as the Federal Circuit has recently pointed
out, the USPTO's "substantial new question of patentability"
standard for granting a reexamination is not equivalent to and is

-57-

less stringent than the "substantial question of validity" standard that a defendant may satisfy to prevent the court from imposing a preliminary injunction.  See Proctor & Gamble Co., 549 F.3d at 848.

Therefore, the court concludes that the granting of a reexamination request by the USPTO is only a single factor to consider and is not dispositive as to the objective prong of the willful infringement standard, regardless of when the alleged willfully infringing activity occurs.[129]  The court also concludes that the <u>outcome</u> of a reexamination proceeding is far more persuasive, though again not necessarily dispositive, as to whether the defendant acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent," Seagate, 497 F.3d at 1371, than the mere fact that a reexamination proceeding occurred.  See Matsushita, No. 04-1436-JJF-LPS, 2009 WL 1649675, at *2 (stating that it was "important to note that . . . the reexamination proceeding resulted in the issuance of reexamination certificates . . . without amendment to any of the claims" in concluding that the plaintiff's willful infringement claim was not foreclosed as a matter of law); Palm, No. 06-404-JJF-LPS, 2009 WL 1649751, at *1 (finding it "particularly" important

_____

[129]Safoco argues that because the reexamination was initiated after Cameron began infringing, it is not relevant at all to whether Cameron willfully infringed.  In support of its argument, Safoco cites only pre-<u>Seagate</u> case law -- cases decided when the willful infringement standard was purely <u>subjective</u>.  Accordingly, the court does not find them persuasive.  Because the first prong of the <u>Seagate</u> standard is an <u>objective</u> test, the reexaminations are relevant, even though they occurred after Cameron's allegedly infringing activity began.

-58-

that "the [US]PTO ultimately issued reexamination certificates for each of the patents-in-suit without any amendment to the claims" in concluding plaintiff's willful infringement claim was not futile); TGIP, 527 F. Supp. 2d at 579 (finding it persuasive that one of the patents at issue was not only reexamined but that "the USPTO did require changes to the . . . patent" in concluding that the plaintiff's willful infringement claim failed as a matter of law).

### b.   Analysis

In this case, both the '531 patent and the '605 patent were reexamined by the USPTO.  While this militates against Safoco's claim for willful infringement, it does not foreclose it as a matter of law.  More importantly, both the patent examiner and the BPAI found that claim 3 of the '605 patent -- the only claim from that patent asserted in this action -- was patentable as originally issued.[130]  As for the '531 patent, the USPTO issued a reexamination certificate stating that claim 22 was patentable as originally issued.[131]  And although the USPTO did require amendments to claims 2, 14, and 21,[132] this court has already concluded that these changes were not substantive, nor did they in any way narrow the

---

[130]See Cameron Int'l Corp. v. Safoco Inc., Appeal Nos. 2008-0750 & 2008-0988, slip op. at 2-3, 79 (B.P.A.I. Dec. 4, 2008) (included in Cameron's MSJ, Docket Entry No. 213, at Exhibit 21E).

[131]'531 patent, Reexamination Certificate, 1:16.

[132]Safoco has withdrawn its assertions of infringement of claim 27.  Memorandum and Recommendation on Procedural Bars to Recovery, Docket Entry No. 185, at 16.  Therefore, Safoco now only asserts infringement of claims 2, 14, 21, and 22 of the '531 patent.  Id.

scope of the claims.[133]   In fact, all that the USPTO required was
that these claims, which had originally been dependent claims, be
rewritten as independent claims.[134]   No claim terms were changed.
Accordingly, the court concludes that the reexaminations of the
'531 patent and the '605 patent, alone, do not foreclose Safoco's
claims of willful infringement as to those patents.

    3.   Cameron's Defenses

        Cameron also asserts that Safoco cannot satisfy the Seagate
standard for willful infringement as to the '531 and '605 patents
because Cameron has raised legitimate defenses to Safoco's
infringement claims.   Although Seagate did not clearly suggest that
legitimate infringement defenses would negate a claim of willful
infringement, two Federal Circuit cases decided after Seagate have
so indicated.   First, in Black & Decker, Inc. v. Robert Bosch Tool
Corp., 260 Fed. App'x 284 (Fed. Cir. 2008), the Federal Circuit
reviewed a district court judgment in favor of the patentee.   The
jury had found that the defendant had willfully infringed several
of the patents at issue, and the trial court had awarded enhanced
damages.   Id. at 286.   The Federal Circuit vacated the judgment on
claim construction grounds and remanded for further proceedings.
Id. at 290.   The court also noted that if the district court was
required to revisit the issue of willful infringement, it should

---

[133]Memorandum and Recommendation on Procedural Bars to
Recovery, Docket Entry No. 185, at 20-27.

[134]Id.

take into account the court's ruling in <u>Seagate</u>.  <u>Id.</u> at 291.  The
court further explained that "under [<u>Seagate</u>'s] objective standard,
both legitimate defenses to infringement and credible invalidity
arguments demonstrate the lack of an objectively high likelihood
that a party took actions constituting infringement of a valid
patent."  <u>Id.</u>

The <u>Black & Decker</u> opinion was unpublished, and the court's
statements regarding legitimate defenses were only <u>dicta</u>.  But
several weeks ago the Federal Circuit affirmed, in a published
opinion, a district court's grant of judgment as a matter of law
that the plaintiff could not prove willful infringement under
<u>Seagate</u> because, although the jury found infringement under the
doctrine of equivalents, the defendant had presented a legitimate
non-infringement defense.  <u>See</u> <u>Depuy Spine, Inc. v. Medtronics
Sofamor Danek, Inc.</u>, 567 F.3d 1314, 1337 (Fed. Cir. 2009).

Prior to trial in the <u>Depuy</u> case, the district court had
granted the defendant's summary judgment motion of no literal
infringement, and the Federal Circuit had, in a prior appeal,
upheld that ruling.  <u>Id.</u> at 1336.  The district court had also
granted the defendant's motion for summary judgment of no
infringement under the doctrine of equivalents, but the Federal
Circuit reversed, finding that a question of fact existed.  <u>Id.</u>
Accordingly, the "question of equivalence was a close one . . . ."
<u>Id.</u> at 1337.  So close, in fact, that "[t]he jury could have
reasonably found for either party on the question of equivalence."

-61-

Id.  Because it was such a close call as to whether the accused infringing devices actually infringed, the court concluded that, as a matter of law, "an objectively high likelihood of infringement could not have been found under Seagate's first prong."[135]  Id.

The court, however, was careful to state that just because "an issue [i]s submitted to a jury does not automatically immunize an accused infringer from a finding of willful infringement . . . ." Id.  Therefore, the inquiry is case-specific:  If "the record developed in the infringement proceeding in [a particular] case, viewed objectively, indisputably shows that the question of equivalence [is] a close one," the plaintiff will not be able to establish willful infringement as a matter of law.  Id.

In this case Cameron has raised multiple non-infringement and invalidity defenses to Safoco's infringement claims for both the '531 patent and the '605 patent.  The court has considered them in

---

[135]Safoco argues that raising legitimate defenses to infringement is not sufficient to defeat a claim of willful infringement.  Safoco primarily relies on a pre-Seagate Federal Circuit case for that proposition.  See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1347 (Fed. Cir. 2004) (holding that "[t]he answer is 'no'" to the question of whether "the existence of a substantial defense to infringement [is] sufficient to defeat liability for willful infringement even if no legal advice has been secured").  Safoco also cites several post-Seagate district court cases that, according to Safoco, suggest that Seagate did not change this rule.  In light of Seagate, Black & Decker, and Depuy, Knorr-Bremse's holding that substantial defenses do not defeat claims for willful infringement is clearly no longer good law.  Furthermore, to the extent that the post-Seagate district court cases that Safoco cites actually hold that Seagate did not change the Knorr-Bremse rule, this court disagrees.

the context of ruling on Safoco's motions for summary judgment of infringement and Cameron's motions for summary judgment of invalidity and non-infringement.

None of Cameron's four invalidity arguments addressed in the Magistrate Judge's February 24, 2009, Memorandum and Recommendation on Invalidity present close questions with regard to the validity of the '531 or '605 patents, nor do they hinge on outstanding issues of material fact.[136]  Similarly, Cameron's non-infringement and invalidity arguments regarding the '531 and '605 patents discussed in this Memorandum Opinion and Order are not particularly strong and do not involve unresolved issues of material fact. Accordingly, the court cannot conclude that Cameron has presented any defenses to Safoco's infringement claims for the '605 patent that preclude a finding of willful infringement.  The court will therefore deny Cameron's motion for partial summary judgment as it relates to willful infringement of the '605 patent.

With regard to the '531 patent, however, at least one of Cameron's non-infringement arguments presents a close factual question for some of the accused infringing devices.  As the court will explain, it precludes a finding of willful infringement as a matter of law.

The Magistrate Judge's February 27, 2009, Memorandum and Recommendation on Infringement analyzed Safoco's motions for

_____

[136]See Memorandum and Recommendation on Invalidity, Docket Entry No. 169.

partial summary judgment of infringement of claims 2 and/or 21 of the '531 patent as to certain accused infringing devices.[137] Cameron responded by raising two non-infringement defenses: (1) the accused devices lack a rotatable lower spring retainer, and (2) the accused devices lack a bonnet stem that is unconnected to the operator member.[138]

The Magistrate Judge found the second defense regarding the unconnected bonnet stem and operator member to be meritless, concluding that Cameron's devices "read on this particular element of the '531 patent."[139]  With regard to whether the accused devices include rotatable lower spring retainers, however, the Magistrate Judge found Cameron's defense to present a genuine question of fact.

Cameron argued that the lower spring retainers in its accused devices are incapable of rotation once fully assembled.[140]  Safoco argued that whether the spring retainers are capable of rotation should be evaluated during the assembly process and not when the device is fully assembled.  According to Safoco, the lower spring

---

[137]Memorandum and Recommendation on Infringement, Docket Entry No. 170, at 6.  The particular accused infringing devices are listed in Safoco's two motions for partial summary judgment of infringement regarding the '531 patent.  See Docket Entry No. 123, at 4-5; Docket Entry No. 124, at 1-2.

[138]Id. at 9.

[139]Id. at 16.

[140]Id. at 10-12.

retainers in Cameron's devices are rotatable during assembly.[141]  In light of the parties' conflicting arguments and evidence, the Magistrate Judge concluded that a genuine issue of fact exists: "[a]ssuming that a jury is convinced by the evidence of both parties (which, the court finds, a reasonable jury might be), the jury must still determine whether a lower spring retainer that is rotatable during installation and firmly secured after assembly reads on the '531 patent."[142]

This is the type of close factual question that precluded a finding of willful infringement in Depuy.  See Depuy, 567 F.3d at 1337 (holding that a finding of willful infringement was precluded because "the question of equivalence was a close one," and required "'an intensely factual inquiry'" (quoting Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc., 212 F.3d 1377, 1381 (Fed. Cir. 2000))).  Accordingly, the court concludes that Safoco cannot, as a matter of law, prove that Cameron willfully infringed the asserted claims of the '531 patent based on Cameron's alleged making, using, selling, or offering to sell the particular accused devices listed in Safoco's motions for partial summary judgement of infringement (Docket Entry Nos. 123, 124).[143]

---

[141]Id. at 12.

[142]Id. at 13-14.

[143]Although Safoco only sought summary judgment of infringement of claims 2 and 21 of the '531 patent, Memorandum and Recommendation on Infringement, Docket Entry No. 170, at 6, all of the claims of the '531 patent asserted in this action -- claims 2,
(continued...)

### IV.   Safoco's Motion for Partial Summary Judgment

Safoco moves the court to enter partial summary judgment that Cameron is estopped under 35 U.S.C. § 315(c) from asserting in this action that the '605 patent is invalid based on grounds that Cameron asserted or could have asserted in the <u>inter partes</u> reexamination proceeding for the '605 patent.  In response, Cameron contends that the <u>inter partes</u> reexamination of the '605 patent is not yet final -- and therefore that its preclusive effect has not yet attached -- because an appeal of the USPTO's decision is currently pending in the Court of Appeals for the Federal Circuit, and the USPTO has not yet issued a reexamination certificate.

35 U.S.C. § 315(c) provides:

> A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim <u>finally</u> determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings.  This subsection does not prevent the assertion of invalidity based on newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings.

35 U.S.C. § 315(c) (emphasis added).  The statute, by employing the word "finally," clearly indicates that the estoppel effect of the

---

[143](...continued)
14, 21, and 22 -- include the "lower spring retainer . . . rotatable relative to said bonnet housing" element.  '531 patent, 10:34-39; '531 patent, Reexamination Certificate, 2:62-65, 4:55-58, 7:42-45.  Therefore, Cameron's legitimate defense is applicable to and precludes a finding of willful infringement of all four asserted claims of the '531 patent.

inter partes reexamination does not attach until the reexamination proceeding is final.  Safoco does not disagree.  Safoco and Cameron only dispute when it is that the USPTO "finally determine[s]," id., that a claim challenged in an inter partes reexamination is valid and patentable.

Neither party cites any case, and the court could not locate one, in which a court has determined when an inter partes reexamination becomes final for the purposes of § 315(c), thereby triggering its preclusive effect.[144]  In fact, the court was only able to locate one case in which a party attempted to invoke § 315(c), but in that case the USPTO had issued a reexamination certificate, and the finality of the reexamination proceeding was

---

[144]The parties cite a 2006 district court opinion in Sony Computer Entertainment America, Inc. v. Dudas, No. 1:05CV1447, 2006 WL 1472462 (E.D. Va. May 22, 2006), but it did not directly deal with 35 U.S.C. § 315(c), nor did it decide the question at issue here.  Instead, Sony Computers dealt primarily with an analogous and complementary statutory provision found in 35 U.S.C. § 317(b), which provides that a party that attempts but fails in a civil action to prove that a patent claim is invalid, and against which a "final decision" has been entered to that effect, is estopped from later requesting an inter partes reexamination of that patent claim based on any issue that was raised or that could have been raised in the civil action.  See 35 U.S.C. § 317(b); Sony Computers, No. 1:05CV1447, 2006 WL 1472462, at *1-5.  Accordingly, the Sony Computers decision is only marginally helpful.  One point is worth noting, however.  The Sony Computers court, along with the USPTO and the other parties to that litigation, apparently assumed that the preclusive effect that a civil action has on an inter partes reexamination under 35 U.S.C. § 317(b) does not attach when a district court enters a final judgment, but, instead, attaches only after the appeals process is complete.  See id. at *3, *6-7.  This suggests that the analogous estoppel provision of 35 U.S.C. § 315(c) is likewise not triggered until the applicable appellate process is complete.

not disputed.  *See* Acco Brands, Inc. v. PC Guardian Anti-Theft Products, Inc., 592 F. Supp. 2d 1208, 1217 (N.D. Cal. 2008).

Cameron contends that an inter partes reexamination proceeding is not final until the USPTO issues a reexamination certificate.[145] In support of its position, Cameron cites the USPTO's Manual of Patent Examining Procedures ("MPEP") and 35 U.S.C. § 316(a).[146]  The USPTO's MPEP states that "[a]n inter partes reexamination certificate is issued at the close of each inter partes reexamination proceeding in which reexamination has been ordered under 37 CFR 1.931 . . . ."  U.S. Patent & Trademark Office, Manual of Patent Examining Procedures § 2690 (2008).[147]  The statute cited by Cameron provides:

> In an inter partes reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable.

35 U.S.C. § 316(a).  The court agrees that these authorities suggest that an inter partes reexamination does not become final until the USPTO issues a reexamination certificate.

Safoco, however, suggests that an inter partes reexamination proceeding is final once the BPAI issues a final decision,

---

[145]Cameron's Response, Docket Entry No. 221, at 3.

[146]Id.

[147]A copy of § 2690 of the MPEP is included in Cameron's Response, Docket Entry No. 221, at Exhibit D.

-68-

regardless of whether an appeal is taken to the Court of Appeals for the Federal Circuit and regardless of whether a reexamination certificate has issued.[148]   But Safoco cites no authority or precedent in support of its position.

Based on the authorities cited by Cameron, the court concludes that a patent claim is not "finally determined to be valid and patentable," 35 U.S.C. § 315(c), in an <u>inter partes</u> reexamination proceeding until the USPTO issues a reexamination certificate. Because the USPTO has not yet issued a reexamination certificate for the '605 patent, the <u>inter partes</u> reexamination procedure for that patent is not yet final, and 35 U.S.C. § 315(c) has not yet been triggered.  Accordingly, the court will deny Safoco's motion for partial summary judgment, and Cameron will not be precluded from raising invalidity arguments at trial that it raised or could have raised during the <u>inter partes</u> reexamination.

This conclusion requires the court to address one additional issue.   In its response to Safoco's summary judgment motion, Cameron asserts that the Magistrate Judge improperly and prematurely relied on the reexamination estoppel provision of 35 U.S.C. § 315(c) in recommending that the court deny one of Cameron's motions for partial summary judgment of invalidity.[149]

---

[148]<u>See</u> Safoco's Reply, Docket Entry No. 224, at 1 ("The proceedings in the USPTO with respect to the '605 Reexamination are final, and the Board issued its final decision when it denied Cameron's motion for hearing.").

[149]Cameron's Response, Docket Entry No. 221, at 7.

Accordingly, Cameron requests that the court reconsider and vacate its order adopting the Magistrate Judge's recommendation to the extent it was based on reexamination estoppel.

In the Magistrate Judge's February 24, 2009, Memorandum and Recommendation on Invalidity, she considered Cameron's arguments that the patents at issue in this case are (1) invalid as indefinite under 35 U.S.C. § 112, ¶ 2, because the term "unconnected" is ambiguous, and (2) invalid under 35 U.S.C. § 112, ¶ 1, because they fail to teach how to build a device with a bonnet stem "unconnected" to the operator member.[150]   In addressing these arguments, the Magistrate Judge pointed out that the BPAI, in its opinion issued in the consolidated appeals of the '605 patent and '477 patent _inter partes_ reexamination proceedings, adopted a definition of the term "unconnected" very similar to the court's definition and found that the embodiments of the invention disclosed in the specification met this definition.[151]   The

---

[150]_See_ Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 10-12; Cameron International Corporation's Renewed and Revised Motion and Supporting Memorandum for Summary Judgment, Docket Entry No. 114, at 7-11.  These arguments were asserted in response to the court's claim construction ruling, which Cameron opposed, that the term "unconnected" in the subject patents means "not joined or fastened either directly or through intervening parts."   _See_ Report and Recommendation on Claim Construction, Docket Entry No. 94, at 38-39.  They present additional examples of Cameron's veiled but unmeritorious attempts to have the court reconsider its claim construction rulings.

[151]Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 12-13.  _See also_ Cameron Int'l Corp. v. Safoco Inc., Appeal Nos. 2008-0750 & 2008-0988, slip op. at 37-38 (B.P.A.I. Dec. 4, 2008) (included in Cameron's MSJ, Docket Entry No. 213, at (continued...)

Magistrate Judge, citing 35 U.S.C. § 315(c), then concluded that "[t]he Board of Patent Appeals['] determination that the '477 and '605 patents satisfy the definition of 'unconnected' estops [Cameron] from arguing that the term is indefinite because an unconnected bonnet stem is not taught by the patents."[152]  The court adopted the Memorandum and Recommendation on Invalidity without changes on March 20, 2009.[153]

In light of the courts' conclusion that 35 U.S.C. § 315(c) cannot be applied in this case because the <u>inter partes</u> reexamination of the '605 patent is not final, the court agrees that it was improper for the Magistrate Judge to rely on 35 U.S.C. § 315(c) as a ground for denying Cameron's motion for partial summary judgment of invalidity.  Therefore, the court will vacate in part its Order Adopting Magistrate Judge's Memorandum and Recommendation (Docket Entry No. 178).  Specifically, the court will vacate only its adoption of the Magistrate Judge's reasoning for denying Cameron's motion for partial summary judgment to the extent it was based on reexamination estoppel under 35 U.S.C. § 315(c).

---

[151](...continued)
Exhibit 21E) (defining "unconnected" as "not joined or fastened together directly or indirectly, tightly or loosely," and stating that the bonnet stem and operator member disclosed in the specification "satisfy this definition").

[152]Memorandum and Recommendation on Invalidity, Docket Entry No. 169, at 13.

[153]Order Adopting Magistrate Judge's Memorandum and Recommendation, Docket Entry No. 178.

However, the court will not vacate its adoption of the Magistrate Judge's ultimate ruling denying Cameron's motion for partial summary judgment of invalidity. Even if Cameron were not estopped under § 315(c) from asserting the aforementioned invalidity arguments, the court agrees with the BPAI's determinations (and the Magistrate Judge's ultimate conclusion), that the term "unconnected" has a discernable definition and that the '477 and the '605 patents -- and therefore all of the patents -- disclose and enable embodiments of the invention satisfying that definition of "unconnected." Therefore, the court concludes that Cameron's invalidity arguments based on the term "unconnected" lack merit. The court is not persuaded that its interpretation of the term "unconnected" renders the patent invalid under 35 U.S.C. § 112, ¶ 1 or 2.

## V.  <u>Order</u>

Based on the foregoing analysis, the court **ORDERS** the following:

1. Defendant Cameron's Motion for Partial Summary Judgment of No Infringement, Invalidity, and Unenforceability (Docket Entry No. 213) is **GRANTED** as to Safoco's claim for willful infringement of the asserted claims of the '531 patent based on Cameron's alleged making, using, selling, or offering to sell the particular accused infringing devices listed in Safoco's motions for partial summary judgment of infringement (Docket Entry Nos. 123, 124). In all other respects, Cameron's Motion for Partial Summary Judgment is **DENIED.**

2. Plaintiff Safoco, Inc.'s Motion for Partial Summary Judgment that Defendant Cameron's Invalidity Defenses are Barred by Estoppel Effect of <u>Inter</u>

Partes Reexamination (Docket Entry No. 212) is **DENIED**.

3.  Plaintiff Safoco's Objections to and Motion to Strike Section of Cameron's Motion (Docket Entry No. 222) is **DENIED**.

4.  The court **VACATES** in part its Order Adopting Magistrate Judge's Memorandum and Recommendation (Docket Entry No. 178). The court **VACATES** only its adoption of the Magistrate Judge's reasoning for denying Cameron's motion for partial summary judgment stated in the Magistrate Judge's Memorandum and Recommendation on Invalidity (Docket Entry No. 169) to the extent it was based on reexamination estoppel under 35 U.S.C. § 315(c). The court does not vacate its adoption of the Magistrate Judge's ultimate recommendation that Cameron's motion for partial summary judgment be denied.

5.  The court will conduct a pretrial conference on August 6, 2009, at 1:30 p.m. in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Street, Houston, Texas. Among other issues, the court will discuss the prospect of settlement. To assist in that discussion the court requires the attendance of the executive officer of each party with final decision-making authority in this action.

**SIGNED** at Houston, Texas, on this the 31st day of July, 2009.

SIM LAKE
UNITED STATES DISTRICT JUDGE